court refused to enjoin a violation of the covenants on account of a changed condition of the neighborhood, it was expressly recognized that there might be a liability for damages in an action at law (see McClure v. Leaycraft, 183 N. Y. 36, 75 N. E. 961, 5 Ann. Cas. 45; Goodhue v. Cameron, 142 App. Div. 470, 127 N. Y. Supp. 120); and in Zipp v. Barker, 40 App. Div. 1, 57 N. Y. Supp. 569, affirmed 166 N. Y. 621, 59 N. E. 1133, building on a courtyard in violation of a restrictive covenant was enjoined, notwithstanding the fact that the evidence showed that the character of the neighborhood had changed from residential to business purposes since the making of the restrictive covenants.

[2, 3] As already observed, the parties for whose benefit these restrictive covenants were made are not before the court, and therefore it is not competent for the court to decide whether they are entitled to have a violation of the covenants enjoined, or to recover damages for a violation thereof. Those are the questions to which the briefs of the respective parties are addressed; but the question presented for decision by this submission is whether the defendant's title is marketable, and the authorities bearing upon that question have not been cited, or drawn to our attention by counsel for either party. It is, however, the well-settled rule that specific performance of a private contract to purchase land will not be enforced unless the title is marketable, and that a title subject to restrictive covenants which impose greater restrictions on the use of the land than those imposed by law render the title unmarketable, and that the court will not in such case inquire into the question whether the restrictions are beneficial or otherwise. Heller v. Cohen, 154 N. Y. 299, 306, 48 N. E. 527; Kountze v. Helmuth, 67 Hun, 343, 22 N. Y. Supp. 204, affirmed 140 N. Y. 432, 35 N. E. 656; Goodrich v. Pratt, 114 App. Div. 771, 100 N. Y. Supp. 187; Wetmore v. Bruce, 118 N. Y. 319, 23 N. E. 303; Dieterlen v. Miller, 114 App. Div. 40, 99 N. Y. Supp. 699; Heim v. Schwoerer, 115 App. Div. 295, 100 N. Y. Supp. 808, affirmed 187 N. Y. 543, 80 N. E. 1111; Scudder v. Watt, 98 App. Div. 228, 90 N. Y. Supp. 605; McDougall v. Schneider, 134 App. Div. 208, 118 N. Y. Supp. 861.

We are of opinion, therefore, that the title was unmarketable, and that the plaintiff is entitled to judgment for $750 in accordance with the stipulation, but without costs. All concur.

---

FOWLER et al. v. GRESS MFG. CO.

(Supreme Court, Appellate Term, Second Department. March, 1916.)

1. SALES ⚙⟀418(1)—BREACH OF CONTRACT—NOMINAL DAMAGES.

On the breach of seller's contract to deliver lumber, the buyer was entitled to judgment at least for nominal damages.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174, 1180, 1201; Dec. Dig. ⚙⟀418(1).]

⚙⟀For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. SALES ☞418(3)—BUYER'S ACTION FOR BREACH—DAMAGES—STATUTE.

Under Personal Property Law (Consol. Laws, c. 41) § 148, added by Laws 1911, c. 571, providing that where there is an available market for the goods, the measure of damages, in the absence of circumstances showing damages to a greater amount, is the difference between the contract price and the market or current price of the goods when they ought to have been delivered, or, if no time for delivery was fixed, then on the refusal to deliver, the buyer of certain lumber purchased afloat in the harbor available for delivery before the date when the seller refused to deliver, was entitled to the difference between the contract price and the current or market price of lumber available for delivery on the date when the seller refused to deliver it.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1181; Dec. Dig. ☞418(3).]

3. SALES ☞418(3)—BUYER'S ACTION FOR BREACH—DAMAGES—MARKET PRICE.

If the lumber could have been purchased afloat within the port of New York, where it was to be delivered, the damages would be the difference between the contract price and such market price, instead of the market price for lumber to be brought from the South at some indefinite time; but, if there was no available market for lumber afloat, the market price of such lumber in an available market, whether it came from yards or vessels, was to be taken as the market price.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1181; Dec. Dig. ☞418(3).]

Appeal from Municipal Court, Borough of Brooklyn, First District.

Action by Robert A. Fowler and another against the Gress Manufacturing Company. From a judgment in favor of the defendant, dismissing plaintiffs' complaint on the merits, they appeal. Reversed, and a new trial ordered.

Argued before KAPPER, BLACKMAR, and CALLAGHAN, JJ.

Alfred R. Bunnell, of New York City, for appellants.

Conklin & Reid, of New York City (Harry D. Holden and William R. Conklin, both of New York City, of counsel), for respondent.

BLACKMAR, J. [1] The contract and the breach by the defendant was established beyond dispute and found by the court. The plaintiffs were therefore entitled to judgment, at least for nominal damages. But the real question litigated was whether plaintiffs had proved substantial damages; and we think the decision reached by the learned trial justice, so concisely stated in his opinion, requires a consideration of that question by this court.

[2, 3] The action was brought for the failure of the defendant, the vendor in an executory contract for the sale of merchandise, to make delivery. The measure of damages is fixed by statute as follows (Personal Property Law, § 148):

"Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

The merchandise was 40,000 feet of long leaf yellow pine, dressed on one side. No time was fixed for delivery in the contract; but the defendant, by a letter written subsequently to the date of the contract, stated that the lighter could not be at plaintiffs' place "before Thursday or Friday of next week," and, as the lumber was on a lighter in the harbor, prompt delivery was anticipated by both parties. On November 16, 1914, defendant arbitrarily refused to deliver the goods. According to the words of the statute, as the contract fixed no time for delivery, the damages must be ascertained as of the date of the refusal, to wit, November 16th.

Stress is laid on the difference between a wholesale and retail market, and the decision that plaintiffs had not proved damages rested on the use of these terms. The witnesses did use these terms; but in fact the real difference between the two markets was that one was a market for the lumber'afloat, either in sailing vessels or lightered from steamers, as brought from the South, and the other was a market for the lumber sold from the yards. The price of lumber delivered from the yards, whether in large or small amounts, was much greater than for that afloat, because subjected to the added expense of handling. There was no lumber afloat for immediate delivery in the harbor of New York on November 16th. The only way in which plaintiffs could have obtained that amount, at what the witnesses called "wholesale," was to buy it for shipment from the South. It might have taken weeks to get delivery. But the plaintiffs did not purchase lumber to be brought from the South. They bought lumber then, when the contract was made, in the port of New York lying on a lighter, delivery of which was practically immediate. They were not indemnified if compelled to buy and wait an indefinite time for arrival from the South. The letter written by the plaintiffs, after the breach of the contract, did not change the rights of the parties, which were fixed when the contract was breached.

If it can be established that there was an available market for lumber then in the harbor of New York, the price for which did not exceed the contract price, the judgment should be for nominal damages. But if that price was only for lumber to be brought at some indefinite time in the future from the South, then the damages are measured by the market or current price in any other available market. It seems from the evidence that the amount and kind of lumber in question could have been bought in the port of New York on November 16th. There was therefore an available market. If there was such an available market, the plaintiffs were entitled to resort to it to measure their damages. If the defendant suffers on account of the enhanced price, being the difference between the price of lumber afloat and lumber in the yards, it is the result of its breach of the contract. The statutory measure of damages should not be distorted to save a defendant who has deliberately and without excuse broken his contract.

We have carefully considered whether the conclusion of the learned trial justice that plaintiffs "suffered no damages" could not be sustained by the evidence of the market in Maurer and Newark, N. J. But we are not satisfied that the merchandise could have been pur-

chased there, loaded into lighters, and brought and delivered f. o. b.
plaintiffs' dock at the contract price. We state in conclusion as fol-
lows:

First. Plaintiffs, having purchased merchandise then in the harbor
of New York, available for delivery before the date when defendant
refused to deliver, are entitled to the difference between the contract
price and the current or market price for lumber available for delivery
on November 16, 1914.

Second. If the lumber could have been purchased afloat within
what is recognized as being the port of New York, in its commercial,
and not geographical or political, sense, this is the market price to be
taken, but not the market price for lumber to be brought from the
South at some indefinite time.

Third. If there was no available market for lumber afloat, then re-
sort should be had to any other available market, and this means a
market where there is a current or market price for lumber of the
kind and quantity specified in the contract, without regard to whether
it comes from yards or vessels.

The judgment is reversed, and a new trial ordered, with $30 costs
to the appellants to abide the event. All concur.